IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ELLICOTT MACHINE CORPORATION          :
INTERNATIONAL                         :
                                      :
                                      :
        v.                            :        CIVIL NO. CCB-00-CV-3034
                                      :
JESCO CONSTRUCTION                    :
CORPORATION, et al.                   :
                                      :

...oOo...

## MEMORANDUM

Now pending before the court are cross-motions for summary judgment by

Plaintiff/Cross-Defendant, Ellicott Machine Corporation International ("Ellicott") and

Defendants/Cross-Plaintiffs Jesco Construction Corporation of Mississippi and Jesco

Construction Corporation (collectively referred to as "Jesco"). Ellicott seeks payments for

money allegedly owed to it under invoices arising out of three lease agreements with Jesco for

certain dredges and related equipment. Jesco alleges that one of the dredges was defective and

that, due to spoliation of evidence, it cannot determine whether Ellicott breached one of the lease

agreements or committed fraud. For the reasons that follow, the court will grant Ellicott's

motion.

I.

Rule 56(c) of the Federal Rules of Civil Procedure provides that:

[Summary judgment] shall be rendered forthwith if the pleadings, depositions,
answers to interrogatories, and admissions on file, together with the affidavits,
if any, show that there is no genuine issue as to any material fact and that the
moving party is entitled to a judgment as a matter of law.

-1-



A genuine issue of material fact exists if there is sufficient evidence for a reasonable finder of fact to return a verdict in favor of the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994). In making this determination, the evidence of the party opposing summary judgment is to be believed and all justifiable inferences drawn in her favor. Halperin v. Abacus Tech. Corp., 128 F.3d 191, 196 (4th Cir. 1997) (citing Anderson, 477 U.S. at 255). The non-moving party may not rest upon mere allegations or denials in her pleading, however, but must set forth specific facts showing that there is a genuine issue for trial. Anderson, 477 U.S. at 248; Allstate Fin. Corp. v. Financorp, Inc., 934 F.2d 55, 58 (4th Cir. 1991). The "mere existence of a scintilla of evidence in support of the plaintiff's position" is not enough to defeat a defendant's summary judgment motion. Anderson, 477 U.S. at 252.

## II.

In 1999, Ellicott and Jesco entered into three lease agreements. Specifically, one lease agreement, signed on December 13, 1999 by the parties, called for Ellicott to deliver a Mud Cat 370 dredge to Jesco. The Mud Cat 370 dredge was to be used on a dredging project called Shallow Creek in Fort Howard, Maryland. The lease promised that Ellicott would deliver a new dredge. (See Def. Ex. 2 at 1.)

On the morning of January 11, 2000 at 10:30 a.m., the Mud Cat 370 dredge stopped working. The pump assembly was removed by Jesco and shipped back to Ellicott on January 12, 2000. Ellicott disassembled the pump and determined that the impeller had failed and broken

loose from its drive shaft.[1]  (See Def. Ex. 5.)  Ellicott replaced the impeller with a new one and sent the pump assembly back to Jesco.  The new pump assembly was installed by Jesco and became operable on January 13, 2000 at 2:30 p.m.  According to Jesco, it would have finished the project on January 19, 2000 without this interruption in operation.  Jesco further alleges that the "delay pushed Jesco into a period of severe winter weather that shut down the project, with high winds, snow, ice, and blizzard conditions combining to prevent completion until February 9, 2000."  (Def. Mem. at 4.)  Jesco allegedly suffered damages totaling $188,323.49 due to this delay.

On January 13, 2000, Ellicott contacted the manufacturer of the impeller, Thetford Foundry ("Thetford") and asked Thetford to transport the impeller back to Thetford for inspection because "the impeller's acme threads had failed and where [sic] completely separated from the impeller hub."  (Def. Ex. 5.)  According to Ellicott, "the impeller blades [did] not show any damage consistent with the ingestion of a large object that could stop the impeller's rotation."  (Id.)

Thetford received the impeller on January 26, 2000.  (Def. Ex. 7.)  Thetford contacted Ellicott that day and informed Ellicott that Thetford had supplied a "defective casting."  (Id.; see also Def. Ex. 9 (admitting that the impeller had a "manufacturing flaw")).  Further, Thetford informed Ellicott that it had already created a new design for future impellers that would correct the defect.  The new design called for manufacturing impellers with bigger grooves to give them stronger grips.  (Def. Ex. 7.)

---

[1]The impeller is a large metal disk with vanes attached.  When the impeller spins, it creates suction that pulls dredge material up through pipes from underwater.

On February 1, 2000[2], Thetford "scrapped"[3] the defective impeller.  (See Def. Ex. 15.) On February 2, 2000, Jesco faxed a letter to Ellicott stating: "By this writing we wish to put you on notice that we have suffered losses due to defective equipment, described above, furnished by your firm to perform time sensitive work . . ." (Def. Ex. 16.)  On February 9, 2000, Jesco faxed a second letter to Ellicott specifically requesting "that [the defective impeller] not be altered or destroyed and that it would be available at a later date provided we need our metallurgist to inspect it." (Def. Ex. 13.)

Ellicott has issued invoices to Jesco totaling  $155,680.16.  The invoices include various charges associated with the three leases.  Jesco refuses to pay the invoices because it asserts that the invoices should be offset by the $188,323.49 loss it suffered due to downtime of the Mud Cat 370 dredge.

III.

The Mudcat 370 lease between Jesco and Ellicott provides that Ellicott is not liable "for any incidental or consequential costs or damages for any breach of warranty." (Def. Ex. 2 ¶ 7.) Jesco does not attack the validity of this lease provision.  Instead, Jesco argues that it is entitled to compensation for downtime caused by the defective impeller because this lease provision should be ignored if the Mud Cat 370 dredge provided to it by Ellicott was not new, or

---

[2]The only evidence that the impeller was "scrapped" on February 1, 2000, is a June 27, 2001 letter prepared by Thetford in preparation for this litigation. (See Def. Ex. 15.) A previous letter prepared by Thetford on June 18, 2001, confirms that the impeller was destroyed, but does not provide a date. (See Def. Ex. 8.)

[3]The parties disagree on the meaning of the term "scrapped," however, there is no evidence the impeller was not destroyed on February 1, 2000.

alternatively, if Ellicott knew or should have known about the defective impeller. Jesco

maintains that summary judgment should be granted in its favor based on spoliation of evidence

because Jesco is unable to examine the impeller to determine if either of its theories is true.

Since a favorable ruling for Jesco on the spoliation issue would be dispositive, that issue will be

addressed first.

"Spoliation refers to the destruction or material alteration of evidence or to the failure to

preserve property for another's use as evidence in pending or reasonably foreseeable litigation."

Silvestri v. General Motors Corp., 271 F.3d 583, 590 (4th Cir. 2001) (citation omitted). Further,

> [t]he evidentiary spoliation doctrine is a rule of evidence, administered at the
> discretion of the trial court to respond to circumstances in which a party fails to
> present, loses, or destroys evidence. The spoliation doctrine authorizes a court to
> order dismissal, to grant summary judgment, or permit an adverse inference to be
> drawn against a party, as a means to level the evidentiary playing field and for the
> purpose of sanctioning improper conduct. The application of this rule must take
> into account the blameworthiness of the offending party and the prejudice
> suffered by the opposing party. Additionally, whether or not a party has notice of
> the evidence's relevance to a lawsuit must be considered.

Hartford Ins. Co. of the Midwest v. American Automatic Sprinkler Sys., Inc., 23 F.Supp.2d 623,

626 (D. Md. 1998), aff'd, 201 F.3d 538 (2000) (citations and quotations omitted).

Jesco seeks to have the Court grant summary judgment in its favor due to the alleged

spoliation of evidence. Summary judgment is considered a drastic sanction. Hartford, 23

F.Supp.2d at 626. Thus, the Fourth Circuit has held that a showing that the evidence was

destroyed intentionally and in bad faith is necessary. See Cole v. Keller Industries, Inc., 132

F.3d 1044, 1047 (4th Cir. 1998) (holding it was error for a lower court to grant judgment against

a spoliator where there was no showing that the evidence was destroyed intentionally and there

was no bad faith); see also Silvestri, 271 F.3d at 590 ("In addition, a court must find some degree

of fault to impose sanctions. . . . But dismissal should be avoided if a lesser sanction would perform the necessary sanction."). But cf. Vodusek v. Bayliner Marine Corp., 71 F.3d 148, 156 (4th Cir. 1995) (holding a showing of bad faith is not necessary to justify a trial court's instruction to a jury that it could draw an adverse inference from a party's destruction of evidence). Since Jesco has provided no evidence of bad faith or intentional destruction by Ellicott, it is inappropriate for the court to grant summary judgment in favor of Jesco.[4]

Even a less drastic sanction, for example, an adverse inference against Ellicott, is inappropriate because Jesco has presented no evidence upon which a reasonable fact-finder could conclude that Ellicott provided Jesco with an old dredge machine or that Ellicott was aware of the defective impeller and made fraudulent misrepresentations to Jesco.[5] Jesco may not rely upon the mere assertion that it may be able to establish that Ellicott violated the lease if it could inspect the impeller. See Silvestri, 271 F.3d at 590 ("[W]hile the spoliation of evidence may give rise to court imposed sanctions deriving from [the] inherent power [to control the judicial process and litigation], the acts of spoliation do not themselves give rise in civil cases to substantive claims or defenses."); Hartford, 23 F.Supp.2d at 627 ("[E]ven the allowance of this adverse inference would not alleviate Hartford of its burden to project evidence, as required by Fed. R. Civ. P. 56, which if believed would permit a reasonable fact finder to reach a verdict in

---

[4]Jesco misinterprets the law when it argues that no showing of bad faith is necessary in the Fourth Circuit for a court to grant summary judgment based on spoliation of evidence.

[5]Jesco itself had the opportunity under the lease to inspect the dredge, including the impeller, when it was initially delivered. (Def. Ex. 2 ¶ 7.)

its favor." (citing Stanojev v. Ebasco Serv., Inc., 643 F.2d 914, 923-24 n.7 (2d Cir. 1981))).[6]

Since Jesco has presented no evidence that supports a determination that Ellicott provided Jesco

with an old dredge machine or that Ellicott was aware of the defective impeller, no sanction is

warranted in this case based on spoliation.[7] Accordingly, summary judgment will be granted in

favor of Ellicott on the counterclaim.

IV.

Of the $155,680.16 in unpaid invoices, Jesco disputes several invoices in the amount of

$40,427.63 for various reasons. It is, therefore, undisputed that Jesco must pay Ellicott

$115,252.53.

Of the $40,427.63, Jesco argues that three invoices should not be paid because the course

of performance between the parties contradicts the terms of the leases. First, Jesco argues that an

invoice in the amount of $1026.00 for the cost of replacing bolts on a dredge machine should not

be paid. Jesco argues that the cost of replacement should be offset by the downtime experienced

due to the inoperable dredge machine. The lease agreement provides that Ellicott will not be

---

[6]Jesco's only evidence that the dredge machine was old is that it allegedly did not produce at the level of 200 yards per hour. Allegedly, an Ellicott employee told a Jesco employee that the dredge machine would produce at that level. (Moss Dep. at 90, Def. Ex. 31.) This evidence is insufficient to establish a genuine dispute of material fact for three reasons. First, there is no evidence, other than Jesco's mere assertion, that the machine did not actually produce at that level. Second, the Ellicott employee's statement is likely inadmissible as double hearsay. Finally, the lease, which is a fully integrated agreement, does not guarantee or even refer to a production level.

[7]Although it would not shield a party from sanctions in all cases, the fact that a third-party, Thetford, destroyed the impeller is relevant in this case. Ellicott sent the impeller to Thetford for analysis within the normal course of business. It is true that Ellicott could have explicitly instructed Thetford not to destroy the impeller, however, sanctions are less warranted where Ellicott was not responsible for (or even aware of) the destruction.

liable for any incidental or consequential damages resulting from a breach of warranty,

see Booster Lease ¶ 7,[8] and that Jesco must provide written notice to Ellicott of any defects,

see id., which they did not do in this case. Jesco argues that Ellicott's prior course of

performance contradicts these lease provisions and, therefore, the lease provision should not be

followed.

Second, Jesco argues that an invoice in the amount of $2564.83 "is disputed for the same

reasons as given above for disputing the $1026.00 charge, i.e., downtime experienced due to

Ellicott providing the wrong size bolts on the drive line assembly of the 670 dredge."

Third, Jesco argues that an invoice in the amount of $1583.33 for the cost of certain

equipment should not be paid. Jesco argues that it was precluded by Ellicott from using the

equipment in New York on a time sensitive project. The lease states that the machine can only

be used in Cecil County, Maryland unless authorized by Ellicott. Jesco argues that Ellicott's

prior course of performance contradicts this provision.

The parties do not dispute that Maryland law governs the leases. (See Def. Ex. 2 ¶ 22.)

Md. Code Ann., Commercial Law, § 2A-202 states that:

> Terms with respect to which the confirmatory memoranda of the parties
> agree or which are otherwise set forth in a writing intended by the parties as
> a final expression of their agreement with respect to such terms as are included
> therein may not be contradicted by evidence of any prior agreement or of a
> contemporaneous oral agreement but may be explained or supplemented:
> (a) By course of dealing or usage of trade or by course of performance; and
> (b) By evidence of consistent additional terms unless the court finds the writing
> to have been intended also as a complete and exclusive statement of the terms
> of the agreement. (emphasis added).

---

[8]The Booster Lease agreement was not attached as an exhibit to this motion, however, it
is attached to the complaint.

The lease agreements at issue contain an integration clause establishing that they are "the entire agreement between Lessor and Lessee." Booster Agreement ¶ 24; Mudcat 670 Agreement ¶ 24; Mudcat 370 Agreement ¶ 24. Therefore, course of performance may only be used to explain or supplement ambiguities in the lease agreements. Since there are no ambiguities and Jesco is attempting to admit course of performance evidence that directly contradicts the leases, that course of performance evidence is inadmissible and there is no genuine dispute of fact. Accordingly, Jesco will also be ordered to pay disputed invoices in the total amount of $5174.16.

Invoices in the amount of $35,253.47 remain in dispute. Based on the record before it, the court is unable to determine whether there is a genuine dispute of material fact as to these remaining disputed invoices. Therefore, the court will defer ruling on those invoices and give the parties an opportunity to decide, in light of the court's other rulings, whether to provide the court with supplemental pleadings regarding the remaining disputed invoices. The Court will also grant Ellicott interest on the $120,426.69 it is currently entitled to and attorneys' fees in accordance with the lease agreements. (See Def. Ex. 2 ¶¶ 4, 22.)

V.

Also pending before the Court is Jesco's motion to extend the discovery deadline. Jesco asserts that it needs additional discovery from Thetford to determine more about the destruction of the impeller and to support its spoliation argument. Jesco knew about Thetford before the end of the discovery period, yet the only evidence it made any contact with Thetford to obtain discovery is a challenged assertion that it engaged in a "cooperative process" with Ellicott.

The court recognizes that there are additional hurdles in obtaining discovery from a Canadian company, however, it is inexcusable to wait until the last day of the discovery period to

-9-

attempt to address those problems.  Jesco presumably wants to establish two things: (1) that the impeller was not destroyed until after February 1, 2000; and (2) that the impeller was obviously defective and that Ellicott should have known of the defect before providing the machine to Jesco.

Jesco is essentially attempting to engage in a fishing expedition to establish one of its theories.  After a full discovery period agreed to by the parties, Jesco provided no evidence to the court that the machine was old or that Ellicott should have known about the defective impeller. Jesco had a full and fair opportunity to receive discovery from Thetford during the appropriate time.  The court finds there is not good cause to extend the discovery deadline as required by Fed. R. Civ. P. 6(b).  Accordingly, the motion to extend the discovery deadline will be denied.

A separate order follows.

4/24/02
_____
Date

_____
Catherine C. Blake
United States District Judge

-10-